Good morning, Your Honors. Michael Proctor for Joel Lopez-Loera, the petitioner. At counsel's table is Albert Young, who is on the briefs with me, Your Honors. May it please the Court, my intention is to ask for two minutes of rebuttal time. You may do so, just watch the clock, Counselor. There are two main issues raised by Mr. Lopez here, who is a man who has lived in this country for almost 40 years, a man who is married to a U.S. citizen and a man who has had his own business employing other people for 25 of those years. Issue one is, is Mr. Lopez entitled to seek 212C waiver because he is inadmissible as opposed to being deportable? And issue two is the issue that's been raised by the government, did Mr. Lopez sufficiently exhaust his administrative remedies? Well, let's start with the jurisdictional issue first. Do we have jurisdiction? Was there exhaustion or not? There was, Your Honor. And I want to begin with a concession. If Your Honors are looking in the record for below for the precise formulation of the argument that we have made in the Ninth Circuit, you're not going to find it. What you are going to find is that we made the general claim. We made the general claim that Mr. Lopez should get 212C waiver for relief. We made the general claim that he gets that relief because of his status as being an inadmissible person rather than a deportable person. And that's all that the Ninth Circuit case law requires. But didn't your client concede deportability in the BIA? I wouldn't call it a concession, Your Honor. But even if it is construed as a concession, I don't think it sinks my boat. He said probably, I think counsel said orally, probably, probably is deportable. But the issue here and the issue that we're raising here is he should be treated as inadmissible, not deportable. And he's entitled to the 212C relief because of that. And certainly, time and age But your position is that the mere reference to 212C is enough to protect your inadmissibility argument? We've both cited cases. They've cited Brendan. We've cited a number of cases. When you read all of those cases, basically, they say that there are basically three categories. Number one, people who make general challenges. And that's someone in front of the BIA who says, I'm not deportable or I'm not removable. You figure it out. That's not enough. That's clear under all the cases, the cases that go both ways. The second category is people who raise generally a claim or issue. And claim, I think, is the language of Brendan, which is a case that goes the other way. But all of the cases, Vizcarra-Ayala, Zhang, Pagayan, sort of use similar language. And that's something like, for example, if an immigrant says, well, my felony is not an aggravated felony, but he doesn't make the right argument, that's Vizcarra-Ayala, and that's enough. Or, I qualify for some form of relief, and I'm identifying it, 212C relief, or Convention Against Torture relief. That's enough, too. That's like the Moreno case. And what they also say in the third category, Your Honor, is what it's not required is to make the correct statutory argument. That's the Moreno case. Or to get the I.J.'s holding right in front of the BIA. That's the Vizcarra case. That's okay if you raise the right general issue. Or in one case, it's not even required that you make any legal argument at all. Well, how do you get past the fact that the administrative agency definitely was led to think that you were talking about the portability? You never raised it otherwise. So what most have here, what you're claiming, they made a mistake, but it's almost like invited error. I think there's two parts of my answer to that. One is, if you look at the briefing before the Board of Immigration Appeals, at least in six places that I identified when I was reviewing this last night, this general claim, this general issue is raised about 212C relief in the context of inadmissibility. Now — oh, I'm sorry, Your Honor. Okay. I'm not saying that the word parole was said or that this precise permutation of the legal argument that I'm making now was said, but the general issue was made. The second part of that is, the BIA and the immigration judge were very aware that Mr. Lopez had a status as a parolee. And they were aware of that because the government stated it loud and clear when the government filed its motion to reopen. And they filed its motion to reopen, and in that document, which is at the administrative record in 607, they stated, Mr. Lopez was paroled into the United States on or about August 2, 2002, for a period of time ending with the resolution of his immigration and other court proceedings. That's what they represented to the BIA. I have two questions. Yes. One, a little aside from what Mike was talking about. The first is, assuming that there was a lawsuit, why isn't the government right that the — his parole status was terminated at the point that the case was reopened? Because at that point, he was back to where he was in 1992, which was not on parole, but — Yes. Yes, Your Honor. This first question that you ask can't be answered in 20 seconds, so I'm going to give it my best shot here. They say, gee, we paroled him, yes, but as soon as we filed the charges, it got terminated. And in their brief, they say, they cite three things in support of that. They filed the charges when the case was reopened. That doesn't terminate him. What they say is the filing — they cite, and I've got their cite here, Your Honor, it's on page 34 of their brief, 34 and 35 of their brief. They say the statute, which is 8 U.S.C. 1182d5. They also say the regulation, which is 212.5e2. And then they cite to the administrative record. And what they say is when we served the additional charges, parole was terminated. Okay. Let's take those side by side, because that's wrong. It's wrong for a lot of reasons. That's not what happens, and that's not what happened. If you let's look at the statute, what it says is parole can be terminated, and then it goes on to say, and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States. That's what the statute says. And that's the statute under which they paroled him, by the way. To my mind, until the case was reopened, i.e., he was no longer under a deportation order and it was being redone. And at that point, he was not an applicant for admission. He was in the same status that he was in 1992, which was, what, an LPR. And from there, the deportation proceedings proceeded. Well, if you read that and if you read the CF, corresponding CFR, it says, he shall be restored to the status he or she had at the time of parole. He was restored to that, but then he filed the, then the proceedings were reopened, i.e., the, the, so that he was no longer needed that position anymore because he had a different position, i.e., he was now in the country as an LPR, no? Well, number one, I, the government hasn't cited any case that says that that, that's the case. What they've argued is the serving of the charge is terminating his parole, not the reopening itself. And the service of the charge. The reopening vacated the deportation order that caused all this problem? It, it, it vacated, it vacated the deportation order, correct. But the fact remained that he was outside of the United States. He was outside of the United States, knocking to come in. And the mechanism was that they. But he wasn't once it was, he had to do that because at that point he was under a deportation order. Once there was a reopening and there was no longer a deportation order, it seems to be that that was not his operative status. There's never been any ruling by any immigration judge or BIA that's, that said that his parole status was terminated. He's never been given any notice from the government other than the service of the charges, which when you look at the statute doesn't match up to a, a change in his status from a parolee. Counsel, you're down to one minute. You may wish to reserve. And, and the last thing is, in that representation that they made to him in August excuse me, in November 6th of 2002, they said his parolee status would stay in effect throughout all of these cases. And I'll reserve. Thank you, counsel. The other question quickly about the. Yes, Your Honor. We've, we've, we've made that point in our reply brief. We think that there's, there are jurisprudential reasons to stay the case and we would ask the court to do that. And it makes a lot of sense. But we're sorry to have made that request late. We'll now hear from the government. Thank you. Good morning, Your Honors. May it please the Court, lease us mercy of the Office of Immigration Litigation for the Respondent. Your Honors, in this case today, the Board made a very specific determination that Mr. Lopez-Luera, who is convicted of the aggravated felony of sexual abuse of a minor, was ineligible for a Section 212c waiver because there was no comparable ground of admissibility pursuant to matter of Blake. In its decision, the Board also concluded that nothing in Lopez-Luera's arguments compelled it to conclude that its decision in matter of Blake contributed or contravened, excuse me, its precedent or the controlling law of the Ninth Circuit. The Board further was not persuaded by Lopez-Luera's argument that immigration judge erred in pretermitting his application for waiver under former Section 212c because, essentially because of matter of Blake. Do you agree that Lopez was paroled or not? I'm sorry, Your Honor? Do you agree that Lopez was paroled or not? He was paroled, but as we are at the end of the question, it doesn't matter. Don't we start from there, then? As the government argued in its brief, there is a very specific sequence here. In essence, the Petitioner here, Lopez-Luera, was paroled in on July 23, 2002 to return to the same status as he had prior to his deportation. Okay. To be paroled and be a legal permanent resident at the same time? Well, even though this wasn't included in the record, it is on PACER, and I think that there were representations in the Petitioner's brief as to this effect. But the exact order of July 23, 2002 in the district court order said that in the same status that he had immediately prior to his deportation by the INS on May 29, 2002, and I'd be glad to 28J the order if needed. Having been deported, what was the status of him? Was he legally present? He was so he had been deported and that he had reentered in 1998. And he reentered in 1998 after he'd been deported. Yes, Your Honor. But then he asked to reopen those proceedings, and it turned out they were really all in error. And then they were reopened. Yes, Your Honor. And at that point, you think the parole terminated at some point? At what point? Your Honor, the parole terminated upon, as we argued in our brief, and in contrary to what the Petitioner just argued, it was a combination of things that brought about the termination of parole. One, there were additional charges that were filed with the Immigration Court, and at the same time, proceedings were reopened and the previous deportation order was essentially declared annullity. And that puts him back to where he was in 1998. And that's a precedent. But is there some procedure that had to be done to accomplish the termination of parole, some document that doesn't exist? Well, in essence, as we argued in our brief, because when he was paroled in the United States and proceedings were reopened, the previous deportation order essentially disappeared. It's as if it never existed. It was declared annullity. This was a very specific – the INS's motion was on a very specific ground. It was a gross miscarriage of justice. And this Court has held in Mendez v. INS, which was cited in the Petitioner's briefs and before the district court, and in Widersberger, which was cited by the not only is a new deportation hearing warranted, but the Petitioner is put back into the status that he had prior to the deportation order. So – And what would that status be in this case? An admitted lawful permanent resident, which is why it is correct that he was charged with deportability, not inadmissibility or excludability. Well, could someone be a paroled and a legal permanent resident at the same time? That's a contradiction in terms, isn't it? Not necessarily. Oh, well, just a minute. If you're a lawful permanent resident, you have a right to be here without being paroled. Well, in certain circumstances, if a lawful permanent resident left the country and was trying to come back in, and there were grounds on which they could be found inadmissible, they could be stopped at the border. But that wasn't the situation here. The situation here was that when the deportation order was declared a nullity, he was a lawful permanent resident. He always had the right to come back into the United States once that deportation order was lifted. But the government gave him the handle. They gave him the name. They gave him the status as a parolee. And why should he be able to go by that status? And you admitted yourself that that's what he was told. Again, it's because the proceedings were reopened and the previous deportation order was declared a nullity. The judge wanted him paroled in in order to get everything back on track. But then everything got back on track, i.e., he was back to where he started from. So the problem that had created the need for the parole was gone. Now he has new proceedings. That's basically what happened. And that might have a question about, shouldn't he be holding this case for due life? Well, Your Honor, there are several. In the first instance, this court has settled the question of 212C, of the comparable grounds, 212C. But unless there's some special reason in this case, since the Supreme Court is now reopening that issue, it seems that, I mean, we could just cite it under our other law and then he could file a cert petition and it's all in the same place. So why do that? Why not just hold it? That is, assuming we have jurisdiction in the first place in this case. Well, that would be my first point. Well, no. I'm not sure that's right. Because this question was exhaustive. The Judiland question was definitely exhaustive. But it was waived in the Petitioner's briefs. The Petitioner didn't address it. We run into it all the time. I mean, he couldn't have argued it with any straight face because we did have the controlling law at that point. He certainly could have. It seems to me. And we did hold it for a baby because obviously he thought that it might have an influence for that very reason. And so now it seems to me we should be holding it for Judiland. Well, Your Honor, the case, the law in this circuit is settled, and the Court can follow it if it wishes. And it has been following it in several cases. I don't have the sites in front of me right now. But since it has in – I'm sorry. Let me just take a look. It has in, let's see, in Pascow and in Pascow v. Holder and in – Are these cases cited in your brief, counsel, or is somebody's brief? No. It's recently come out. But again, in my – my argument in my brief is that the Petitioner waived the argument. I'm simply answering – One second. If I may, Judge, just a second. If you wish us to look at the cases you just mentioned, would you please go to the deputy clerk after the argument, get the form that is required, serve three copies on the bench, and to your opposing counsel. If you wish us to look at those cases. Otherwise, we won't. No, certainly. But as I said in my brief, I'm arguing that the Petitioner's waived this particular argument. I don't want to be waiving my waiver, essentially. It's not a jurisdictional problem. And if we chose to reach it because of an understanding that he was briefing it based on the law of the circuit at the time that he was writing this brief, and that there's now the possibility of new law, it seems to me that that would be within our discretion to do. It's not a jurisdictional problem. No, certainly. If this Court wishes to stay it for too long, it certainly can, because it the issue is pending before the Supreme Court. But again, the Respondent's position is that the Petitioner waived the argument and that the law is settled in this Court. Thank you, counsel. Mr. Proctor, you have some reserve time? Not a lot. Very little, Your Honor. I want to address exactly this issue of parolee. I don't want to be in an LPR at the same time, because I think this is really important. If he – if none of these proceedings ever happen, and he's an LPR, but he has this felony, and at the time that he pled guilty, it wasn't something that was going to kick him out of the country, but later the law changed for the worse. If he goes and he travels abroad, when he comes back in, they're going to put him in either exclusion proceedings or removal proceedings with inadmissibility. That's where he was when they paroled him in. And that's why I say, really, it's more akin to an inadmissibility allegation, and that's why he gets 212C relief. And I just wanted to end with why it matters. I've – on and off, I've represented this individual since I was in the Federal Public Defender's Office. He's been arrested three or four times without cause, unjustly, and taken away from his family and deported, time and again. Justice – I mean, Judge Learned Hand talked about what happens to immigrants and how there are hazards to being immigrants and that – and that those hazards shouldn't be too great. And I'm just suggesting that he's paroled. All he wants is his ability to ask, not necessarily receive. The underlying problem here that's putting him in this situation is the matter of basis. In other words, his distinction – I mean, you've been incredibly creative in coming up with a reason why madame McBlake doesn't apply to him, but the problems are not as clear in terms of why he's a really mispositioned. I fully, fully agree and concede that had Abibi gone a different way, that we would have made the argument that we're making today in a different fashion. You're absolutely right, Your Honor, and maybe the Supreme Court will revisit it. Maybe not. Maybe St. Cyr will come and blossom into something else. Maybe it won't. And I understand that was a big debate in this Court. However, I still believe – I don't even think it's – maybe it's creative, maybe it's not. But he was paroled, plain and simple. The statute doesn't take that away from us. We understand your argument, counsel. Your time has expired. Thank you very much. I greatly appreciate it, Your Honor. You're very welcome. The case just arguably submitted for decision.
judges: O'scannlain, Cowen, Berzon